**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA

     Plaintiff,

v.                                                                            1:25-cv-156-DHU-KK

NASTASSIA BECENTI

     Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the United States of America's (the "Government") Motion for Default

Judgment against Defendant Nastassia Becenti ("Becenti"). Doc. 13. The Motion states that

Becenti has failed to answer the Summons and Complaint served on her by certified mail and that

attempts to contact Becenti have been unsuccessful. *Id.* Having reviewed the Motion and related

materials submitted by the Government, and the relevant and applicable law, the Court finds that

the Motion must be denied.

**I.**
**BACKGROUND**

On February 13, 2025, the Government filed a complaint against Becenti under the Federal

Debt Collection Procedures Act, 28 U.S.C. §§ 3001-3308. Doc. 1. In the Complaint, the

Government alleges that Becenti received an Indian Health Service Scholarship in the amount of

$12,435.00. *Id.* at ¶¶ 7-8. In exchange for the scholarship, Becenti signed a contract agreeing to

serve as a nurse for at least two years at a health care facility with a critical shortage of nurses. *Id.*

at ¶ 9. The contract provided that Becenti would be liable to the Government for the amount of her

award, plus interest, if she failed to uphold this contractual obligation. *Id.* The Government alleges

that Becenti did not complete the required service obligation, serving just 506 days at a high-need

1

facility. *Id.* at ¶¶ 10-11. The Government requested judgment against Becenti in the principal amount of $12,798.38 plus interest. *Id.* at 3-4.

On June 12, 2025, counsel for the Government completed a proof of service document indicating that Becenti was served by certified mail at 8009 Lynnhaven Pl NW, Albuquerque, NM 87120 (hereinafter, the "Lynnhaven address"). Doc. 7. This address was different than the one listed on the initial Summons. *Id.* The proof of service included a return receipt signed by an unknown individual. *See* Doc. 7-1. On August 21, 2025, the Government requested that the Clerk of the Court enter default against Becenti because she had not responded within the time allowed. Doc. 8. The clerk entered default on August 22, 2025, Doc. 11, and the Government moved for default judgment on September 3, 2025, Doc. 13.

The Court held a hearing on this matter on January 14, 2026. During the hearing, the Government addressed the discrepancy between the address listed for Becenti on the Summons and the address where service was attempted, explaining that a postal search had produced the second address where the Summons was mailed and that the Government "ha[s] every reason to believe" that Becenti received service. Doc. 15. At the hearing, the Court extended the time for service by sixty days and encouraged the Government to either try personal service again or pursue another method. *Id.*

Since the hearing on January 14, 2026, the Government has made numerous attempts to execute service on Becenti. On January 15, 2026, the Summons and Complaint were attached to an email message and sent to three different email addresses, believed to belong to Becenti, with the subject line, "URGENT ATTENTION: U.S. v. Nastassia Becenti, Case no. 1:25-CV-156-DHU-KK." *See* Doc. 18. at ¶ 2. While delivery failed to two of the email addresses, communication to the address that is associated with Becenti's active nursing license has not been returned; thus,

the Government presumes it was delivered. *Id*. at ¶¶ 3-4. On January 23, 2026, according to the United States Postal Service (USPS) tracking report, the Summons and Complaint were delivered by certified mail to the Lynnhaven address, and an unknown individual once again signed the return receipt. *Id*. at ¶ 1. On February 12, 2026, a Deputy U.S. Marshal attempted service on Becenti at the Lynnhaven address and encountered an unidentified individual who claimed she did not know Becenti and that Becenti did not live at that location. Doc. 18. ¶ 11.

In sum, the Government has attempted notice by certified mail at the Lynnhaven address on two occasions, both of which entailed an unknown individual signing the return receipt. The Government reported that the Deputy Marshal attempted personal service three times before the hearing, and the record indicates that personal service was attempted once more since then (a total of four attempts). Finally, the Government sent the Summons via email to the email address associated with Becenti's registered nursing license.

## II.
## LEGAL STANDARD

Default judgment is a disfavored method of case resolution. *See Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) ("The preferred disposition of any case is on its merits and not by default judgment."). A plaintiff seeking default judgment bears the burden of establishing the validity of service. *Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). Notice requirements serve as procedural safeguards to ensure that every litigant receives a reasonable opportunity to appear and defend in court. *Executive Consulting Inc. v. Kilmer*, 931 F.Supp.2d 1139, 1140 (D.N.M. 2013). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). The Tenth Circuit has consistently held that default judgment entered after ineffective service of process is void for lack

3

of personal jurisdiction. *See Hukill v. Oklahoma Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008).

### III.
### DISCUSSION

Rule 4 of the Federal Rules of Civil Procedure governs the process for issuance of summons and service on the parties at the outset of a lawsuit. Specifically, Rule 4(e) provides that an individual may be served in a judicial district of the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(1)-(2)(C). In this case, notice has not been effectuated by personal service or through delivery to an authorized agent. Therefore, if this Court is to exercise personal jurisdiction over Becenti and grant default judgment, service must be effectuated under either New Mexico law or Rule 4(e)(2)(B), which allows service to be completed by leaving a copy of the summons and complaint with a person of suitable age at the defendant's "usual place of abode."

As grounds for the assertion that Becenti has notice of the suit against her and has chosen not to respond, the Government made several statements in a Declaration filed on March 17, 2026. First, the Government states that a public records search indicated that the individuals listed as residing at the Lynnhaven address are relatives of Becenti, including an individual identified as her "possible mother." Doc. 18. ¶ 5. Next, the Government states that Becenti's vehicle

registration, auto loan, nursing license, and voter registration are all associated with the Lynnhaven address. *Id.* ¶¶ 6-9. Additionally, the Government states that according to a property check conducted via Bernalillo County Assessor records, the owner of the home at the Lynnhaven address is the person identified by public records as Becenti's "possible mother". *Id.* ¶ 10. Finally, the Government states that the Deputy Marshal who attempted personal service after the January 14 hearing reported that there was a white Nissan Rogue in the driveway of the Lynnhaven address, and a public records search indicated that a car matching that description is registered to Becenti's "possible mother." *Id.* ¶ 11.

### A. Service was not effectuated under Rule 4(e)(2)(B).

In this case, the actions taken by the Government and the statements made regarding the results of the Government's public record search are insufficient to assure this Court that Becenti has been properly served under the Federal Rules. First, there is no evidence that Becenti has been personally served or that service was made on an agent authorized by law or appointment to receive service of process for her. Second, there is insufficient evidence that the address where the Government has been attempting service is Becenti's "usual place of abode."

Determining where an individual maintains their "usual place of abode" is a question of fact. *See First Nat. Bank & Trust Co. of Tulsa v. Ingerton*, 207 F.2d 793, 795 (10th Cir. 1953). When making such a determination, the term "usual" is significant and must be given consideration. *Id.* "Generally speaking a person's usual place of abode is the place where he is actually living, except for temporary absences, at the time service is made." *Rosa v. Cantrell*, 705 F.2d 1208, 1214 (10th Cir. 1982). Service that is not completed at the defendant's usual place of abode is ineffective. *Ingerton*, 207 F.2d at 795.

At the January 14 hearing, the Government stated that it believed Becenti had been served by certified mail because "a person would not sign a certified mail receipt if it was not for them." *See* Doc. 15. This statement is speculative at best, particularly in light of the fact that when personal service was attempted at the same address where the Summons and Complaint were mailed, the individual encountered by the Deputy Marshal claimed they did not know Becenti and that she did not live there. Without a clear signature or printed name on the certified mail receipts, this Court cannot make a reasonable inference that Becenti or an authorized agent received service of process in this manner.

Similarly, a public records search indicating that individuals related to Becenti reside at the address where the Government has been attempting service does not lead to a reasonable inference that Becenti herself resides there. The Tenth Circuit has emphasized that determining "usual place of abode" is a fact-specific inquiry tied to actual habitation and living habits. *See Rosa*, 705 F.2d at 1214. Collecting cases from multiple jurisdictions, the *Rosa* court acknowledged that a defendant may still maintain a "usual place of abode" at one residence—even if they have left home or traveled elsewhere—if there are facts indicating continued residence at that place, such as leaving family or personal items behind, voting or receiving mail, or failing to establish residence elsewhere. *Id.* at 1215-16.

In this case, we have some facts that might suggest Becenti's usual place of abode is the Lynnhaven address. For example, the Government believes members of Becenti's family live at that address, and her vehicle registration and nursing license are associated with that address. However, these facts do not provide the Court with enough information to determine whether Becenti has only temporarily left that home, has established residence elsewhere, or even whether she maintains contact with the family members still residing at that address. This is a key

distinction from the cases cited in *Rosa*, where the courts seemingly had more information regarding the nature of a defendant's absence from their home and the defendant's relationship with the individuals remaining in the home. *See id.* (collecting cases). Absent additional evidence indicating that Becenti actually resides at the Lynnhaven address, recently left, or maintains contact with those who live there, this Court cannot find that the defendant "has retained a nexus to the [Lynnhaven] address that is sufficient to afford a reasonable opportunity to receive notice." *Cowherd v. Rubi*, 2008 WL 941632, at *3 (D. Kan. Apr. 7, 2008). Accordingly, at this time, the Court cannot find that service was proper under Rule 4.

> **B. Service was not effectuated under New Mexico law.**

The New Mexico Rules of Civil Procedure require that process "be served in a manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend." Rule 1-004(E)(1) NMRA. Under Rule 1-004, service "may be made, subject to the restrictions and requirements of this rule, by the methods authorized by this rule or in the manner provided for by any applicable statute, to the extent that the statute does not conflict with this rule." Rule 1-004(E)(2) NMRA. New Mexico courts have declined to accept a broad interpretation of the "reasonably calculated" requirement and instead construe subsections (E)(1) and (E)(2) together. *Edmonds v. Martinez*, 2009-NMCA-072, ¶ 17, 164 N.M. 753, 758, 215 P.3d 62, 67. This means that a district court applying New Mexico law does not have personal jurisdiction over a defendant if service has not been effectuated subject to the requirements of Rule 1-004. *Id.*

The actions taken by the Government in this case implicate two methods of substitute service authorized by New Mexico's Rules of Civil Procedure: (1) the rule that allows service at a

7

defendant's usual place of abode; and (2) the rule that allows substitute service by email, text message, or social media.

       1.   <u>Service at usual place of abode</u>

New Mexico permits substitute service "by delivering a copy of the process to some person residing at the usual place of abode of the defendant who is over the age of fifteen (15) years and mailing by first class mail to the defendant at the defendant's last known mailing address a copy of the process." Rule 1-004(F)(2) NMRA. The New Mexico Supreme Court has defined the term "usual place of abode" as "the customary place of abode at the very moment the writ is left posted." *Vann Tool Co. v. Grace*, 1977-NMSC-054, ¶ 10, 90 N.M. 544, 546, 566 P.2d 93, 95. In New Mexico, rules that provide for substitute service of process must be strictly construed. *Household Fin. Corp v. McDevitt*, 1973-NMSC-002, ¶ 4, 84 N.M. 465, 466, 505 P.2d 60, 61. As previously discussed, there is insufficient evidence that Becenti resides at the address the Government has been using to attempt service. Therefore, for the same reasons that the Government has failed to satisfy the requirements of Rule 4 of the Federal Rules of Civil Procedure, it has similarly failed to satisfy the requirements of Rule 1-004 of the New Mexico Rules of Civil Procedure.

       2.   <u>Service by electronic communication</u>

New Mexico also permits substitute service by social media, e-mail, and text message. *See* Rule 1-004(F)(4) NMRA. In relevant part, the Rule states that:

> (a) Upon motion, without notice, and showing by affidavit or other sworn testimony that service cannot be reasonably be made under Subparagraphs (F)(1), (F)(2), or (F)(3) of this rule, the court may authorize service of process by social media, e-mail, text message, or a combination of these methods.

> (b) The party who seeks leave to serve process under this paragraph must demonstrate the following:

(i) that the plaintiff made a diligent attempt to accomplish service under Subparagraphs (F)(1), (F)(2), and (F)(3) of this rule, or that service is impractical under Subparagraphs (F)(1), (F)(2), or (F)(3) of this rule;

(ii) that the defendant has access to, and reasonable ability to use, the necessary technology to receive and read the information required for service through the proposed electronic service methods or method, including a showing that the defendant is an owner of the specific social media account, e-mail address, or telephone number proposed for service and the defendant, within thirty (30) days of the motion, has sent transmissions from that specific social media account, e-mail address, or telephone number proposed for service; and

(iii) that the proposed electronic service methods or method allows for the contents required under this subparagraph.

Rule 1-004 (F)(4)(a)-(c) NMRA.

New Mexico courts interpret Rule 1-004 as providing a hierarchy of methods of service. *Edmonds*, 2009-NMCA-072, ¶ 12. This means that substitute service may only be employed after the plaintiff has attempted, and failed, to effectuate service by the methods provided by the rules that precede it. *Id*. In other words, a plaintiff may effectuate service under subsection (F)(3) only *after* service of process has been attempted in accordance with subsections (F)(1) and (F)(2). *Id*. Similarly, the language of subsection (F)(4)(b)(i) makes it clear that service by email is only available to a plaintiff who can demonstrate that attempts to serve the defendant by the methods outlined in subsections (F)(1)-(3) have been unsuccessful or are otherwise impractical.

Subparagraph (F)(1) provides for notice by personal service or mail/courier service that is accepted by the defendant or an authorized agent. Subparagraph (F)(2), discussed above, allows substitute service at the defendant's usual place of abode. Subparagraph (F)(3) allows substitute service made by "by delivering a copy of the process at the actual place of business or employment of the defendant to the person apparently in charge thereof and by mailing a copy of the summons and complaint by first class mail to the defendant at the defendant's last known mailing address and at the defendant's actual place of business or employment."

9

Although New Mexico allows service to be effectuated by email, the Government has not followed the procedural steps required for service to have been proper under this Rule. First, the Government did not file a motion "showing by affidavit or other sworn testimony that service cannot be reasonably be made under Subparagraphs (F)(1), (F)(2), or (F)(3) of this rule." Rule 1-004(F)(4)(a) NMRA. Second, while the declaration submitted by the Government details attempts to serve Becenti personally and by mail, it describes no attempts to serve the Complaint at her actual place of business or employment. This falls short of the requirements of Rule 1-004(F)(4) allowing for service by email.

Finally, the Government has not demonstrated that Becenti "has access to, and reasonable ability to use, the necessary technology to receive and read the information required for service . . . including a showing that the defendant is an owner of the specific [e-mail address] proposed for service and the defendant, within thirty (30) days of the motion, has sent transmissions from that specific [e-mail address] proposed for service," as required by subparagraph (F)(4)(b)(ii). Additionally, the email that the Government sent does not substantively comply with the requirements of the Rule 1-004, which dictates the form and content that the email must possess in order to satisfy the service requirements. *See* Rule 1-004 (F)(4)(e)(i)-(v) NMRA. For all of these reasons, service was not proper under Rule 1-004.

## IV.
## CONCLUSION

**IT IS THEREFORE ORDERED** that the United States' Motion for Default Judgment is **DENIED**. The Court will not consider another motion for default judgment until the US obtains leave to serve process on Defendant out of time and effectuates such service in compliance with the Federal Rules of Civil Procedure. If such leave is not sought within 60 days, the Court may dismiss this case for failure to prosecute.

**IT IS FURTHER ORDERED** that the Clerk of Court's entry of default in this matter shall be **STRICKEN** from the docket.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE

11